IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

Christina S. Watson                                                                                                Plaintiff

v.                                           No. 4:15-CV–187-SWW-PSH

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration                                                                      Defendant

## Recommended Disposition

### Instructions

The following recommended disposition was prepared for U.S. District Judge Susan Webber Wright. A party to this dispute may file written objections to this recommendation. An objection must be specific and state the factual and/or legal basis for the objection. An objection to a factual finding must identify the finding and the evidence supporting the objection. Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1] The objecting party must serve the opposing party with a copy of an objection. Failing to object within 14 days waives the right to appeal questions of fact.[2] If no objections are filed, Judge Moody may adopt the recommended disposition without independently reviewing all of the record evidence.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

**Reasoning for Recommended Disposition**

Christina S. Watson seeks judicial review of the denial of her application for adult supplemental security income (SSI).[3] Watson's mother, Jannell Jackson, applied for child SSI for Watson three times in the past.[4] In 2008, the Commissioner granted Jackson's third application and awarded child SSI.[5] Watson's child benefits ceased at age 17, she says, because she received a settlement from a motor vehicle accident claim.[6] When Watson turned 18, she applied for adult SSI and based her claim of eye problems.[7]

**The Commissioner's decision**. The Commissioner's ALJ identified borderline intellectual functioning, morbid obesity, pseudotumor cerebri, chronic headaches, asthma, and depressive disorder as severe impairments.[8] The ALJ determined Watson

---

[3] SSA record at p. 128 (applying on Mar. 27, 2012 and alleging disability beginning Dec. 1, 2011).

[4] *Id*. at p. 148 (reflecting denial of applications on Nov. 1, 2001 and Sept. 18, 2003). *See Jackson v Astrue*, cause no. 4:06CV750JTR, docket entry # 17 (E.D. Ark. June 20, 2007, aff'd no. 07-2930 (8th Cir. 2008).

[5] *Id*. at 148 (showing SSI was awarded on Feb. 28, 2008 and paid until Apr. 2011).

[6] *Id*. at pp. 45-46.

[7] *Id*. at p. 155.

[8] *Id*. at p. 26.

can do some unskilled sedentary work.[9] After a vocational expert identified available unskilled sedentary work, the ALJ concluded that Watson is not disabled and denied the application.[10]

After the Appeals Council denied review,[11] the ALJ's decision became the Commissioner's final decision for the purpose of judicial review.[12] Watson filed this case to challenge the decision.[13] The recommended disposition explains why the court should affirm the decision.

**Watson's allegations**. Watson complains about the ALJ's consideration of medical opinion evidence, a lack of specificity about obesity, and the determination about the mental ability to work.[14]

**Applicable legal principles**. When reviewing a decision denying an application for SSI, the court must determine whether substantial evidence supports the decision

---

[9]*Id*. at p. 31.

[10]*Id*. at pp. 37-38.

[11]*Id*. at p. 1.

[12]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[13]Docket entry # 1.

[14]Docket entry #s 13 & 17.

and whether the ALJ made a legal error.[15] For substantial evidence to exist, a reasonable mind must accept the evidence as adequate to support the determination that Watson can do some unskilled sedentary work and that work exists that she can do.[16]

Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."[17] The ALJ placed the following limitations on sedentary work:

(1) no frequent climbing or balancing;

(2) no concentrated exposure of respiratory irritants, temperature extremes, or humidity; and

(3) unskilled work involving tasks with few variables learned and performed by rote, little required independent judgment, incidental interpersonal contact, and simple, direct, concrete supervision.[18]

---

[15]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[16]*Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) (substantial evidence exists if a reasonable mind will accept evidence as adequate to support conclusion).

[17]20 C.F.R. § 416.967(a).

[18]SSA record at p. 31.

For the following reasons, a reasonable mind will accept the evidence as adequate to show Watson can work with these limitations for the following reasons:

> 1. **The record establishes no very serious functional limitation preventing sedentary work**. Sedentary work "represents a significantly restricted range of work. Individuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations."[19]
>
> Treatment records establish obesity as a significant functional impairment. "An [obese] individual may have limitations in any of the exertional functions….[Obesity] may also affect ability to do postural functions…."[20] At age 18, Watson had a body mass index (BMI) of 71.[21] Under medical guidelines, a person with a BMI of at least 30 is obese. Watson contends the ALJ failed to sufficiently explain the impact of obesity on her ability to work, but the reduction to sedentary work indicates Watson lacks the capacity for higher exertional levels of work.
>
> Treatment records establish pseudotumor cerebri as an additional impairment. Pseudotumor cerebri refers to increased pressure in the skull.[22] Increased pressure can cause optic nerves to swell and result in vision loss.[23] Symptoms include headaches that worsen with movement,

---

[19]SSR 96-9p, *Pol'y Interpretation Ruling Titles II & XVI: Determining Capability to Do Other Work--Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work*.

[20]SSR 02-1p, *Pol'y Interpretation Ruling Titles II & XVI: Evaluation of Obesity* ¶ 8.

[21]SSA record at p. 352.

[22]*See generally* Parunyou Julayanont, Amputch Karukote, Doungporn Ruthirago, Deepa Panikkath & Ragesh Panikkath, *Idiopathic intracranial hypertension: ongoing clinical challenges & future prospects*, 9 J. of Pain Research 87 (2016); A.J. Degnana & L.M. Levy, *Pseudotumor Cerebri: Brief Rev. of Clinical Syndrome & Imaging Findings*, 37 Am. J. Neuroradiology 1986 (2006).

[23]*Id.*

ringing in the ears, dizziness, blurred vision, and double vision.[24] Watson experiences these symptoms from time to time.[25]

Pseudotumor cerebri is associated with obese women of reproductive age.[26] According to eye specialists, Watson risks losing her eyesight unless she loses weight. Medical providers prescribed medication, therapeutic lumbar puncture, eye surgery, weight loss, diet changes, lap band surgery, and exercise. These recommendations indicate pseudotumor cerebri can be treated. Despite the risk of vision loss, Watson has 20/20 vision.[27]

Medical evidence documents no very serious functional limitation preventing sedentary work. Watson has periodic exacerbations of asthma, but she's been treated and released. Watson sought no medical treatment during the 16 months preceding the ALJ's decision.[28] The lack of treatment indicates Watson has no disabling symptoms.

---

[24]*Id*.

[25]SSA record at p. 273 (Dec. 28, 2011: left eye occasionally drifts outward, occasional double vision), p. 261 (Jan. 11, 2012, increased headaches, intermittent eye drift), p. 268 (Feb. 8, 2012: blurry vision when she walks up stairs, bothered by light), p. 370 (Feb. 27, 2012: more ringing in the ears but good vision), p. 366 (Mar. 14, 2012: frontal headaches when walking), p. 361 (Mar 21, 2012: still has frontal headaches but not as bad, ear ringing when walking or with movement), p. 394 (May 7, 2012: headache for one week, intermittent double vision).

[26]*See generally* Parunyou Julayanont, Amputch Karukote, Doungporn Ruthirago, Deepa Panikkath & Ragesh Panikkath, *Idiopathic intracranial hypertension: ongoing clinical challenges & future prospects*, 9 J. of Pain Research 87 (2016); A.J. Degnana & L.M. Levy, *Pseudotumor Cerebri: Brief Rev. of Clinical Syndrome & Imaging Findings*, 37 Am. J. Neuroradiology 1986 (2006).

[27]SSA record at pp. 260, 261, 268, 273, 287 & 361.

[28]*Id*. at p. 65 (confirming that she has had no treatment; she's only pursued a disability determination to qualify for Medicaid).

According to medical experts, obesity limits Watson to sedentary work.[29] Sedentary work doesn't require the type of movement that causes Watson's symptoms. The ALJ excluded work environments that could trigger an asthma attack. A reasonable mind will accept the evidence as adequate to support the decision because the ALJ required sedentary work and excluded respiratory irritants.

2. **The record establishes no mental limitation preventing unskilled work.** Unskilled sedentary work involves nonexertional activities, such as capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions.[30] Watson contends the ALJ should have included more mental limitations, in part, based on a childhood psychological evaluation.

Although Watson alleged no mental impairment, the ALJ observed that Watson underwent an agency psychological evaluation at age 12. The evaluation included IQ testing placing Watson at the high end of borderline intellectual functioning.[31] The evaluator suspected that Watson could function at a higher level if she was able to improve her verbal skills with special assistance. The record doesn't confirm whether Watson received special assistance, but she testified that she received special education in English.

Regardless of whether Watson improved her verbal skills after age 12, or whether she now functions at a higher level of intellectual functioning, she's capable of at least unskilled work. A mental health expert opined that she can do work involving tasks with few variables learned and performed by rote, little required independent judgment, incidental interpersonal contact, and simple, direct, concrete supervision. Watson graduated from high school, completed her application documents,

---

[29]*Id*. at pp. 415 & 456.

[30]SSR 96-9p, *Pol'y Interpretation Ruling Titles II & XVI: Determining Capability to Do Other Work--Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work*.

[31]Docket entry # 15, pp. 461 & 463.

described her symptoms, and completed barber training.[32] To the extent she relies on other aspects of the child psychological evaluation, only the IQ score bears on the result. A reasonable mind will accept the evidence as adequate to support the determination that Watson can do unskilled work.

3. **Vocational evidence supports the decision**. The ALJ questioned a vocational expert about available unskilled sedentary work. The vocational expert identified inspectors and mounters as representative jobs.[33] The availability of representative jobs shows work exists that Watson can do, regardless of whether such work exists where she lives, whether a job vacancy exists, or whether she would be hired if she applied for work.[34] Because such work exists, Watson isn't disabled under social security law.

## Conclusion and Recommended Disposition

Substantial evidence supports the ALJ's decision because a reasonable mind will accept the evidence as adequate to support the decision. Watson's impairments permit some unskilled, sedentary work. The ALJ made no legal error. For these reasons, the undersigned magistrate judge recommends DENYING Watson's request for relief (docket entry # 2) and AFFIRMING the Commissioner's decision.

---

[32]SSA record at pp. 59-60 (she completed barber school and signed up to take state licensing exam).

[33]*Id*. at p. 71.

[34]42 U.S.C. § 1382c(a)(3)(B).

Dated this 28th day of March, 2016.

                                                        _____
                                                        United States Magistrate Judge